IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**FILED**
**September 4, 2024**

ASHLEY N. DEEM, CHIEF DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**HARVEY HILL,**
**Claimant Below, Petitioner**

**v.) No. 24-ICA-86**          (JCN: 2020007131)

**LOWES HOME CENTERS, INC.,**
**Employer Below, Respondent**

**MEMORANDUM DECISION**

Petitioner Harvey Hill appeals the February 5, 2024, order of the Workers' Compensation Board of Review ("Board"). Respondent Lowes Home Centers, Inc., ("Lowes") filed a response.[1] Mr. Hill did not reply. The issue on appeal is whether the Board erred in affirming the claim administrator's orders, which (1) denied authorization for an MRI of the cervical spine; (2) denied the addition of cervical disc disorder with radiculopathy as a compensable condition; and (3) denied the addition of vertigo, paresthesias, and tremor as compensable conditions.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2022). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the Board's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

On July 4, 2019, while employed by Lowes, Mr. Hill suffered an injury by inhalation of toxic material related to spray painting being performed at his workplace. Mr. Hill completed an Employees' and Physicians' Report of Occupational Injury or Disease. The physician's portion of the form was completed by a provider at MedExpress; it indicated that Mr. Hill sought treatment on August 22, 2019, and was diagnosed with an occupational injury to his "neuro system" due to exposure to "other hazardous, chiefly nonmedicinal, chemicals."

On August 22, 2019, Mr. Hill was seen at MedExpress for numbness, weakness, and headaches after he inhaled a toxic material at work. After an examination, Mr. Hill was

---

[1] Mr. Hill is represented by Reginald D. Henry, Esq., and Lori J. Withrow, Esq. Lowes is represented by Tracey B. Eberling, Esq.

referred to the emergency room ("ER") at Raleigh General Hospital for further evaluation. Mr. Hill was seen in the ER on the same day. Mr. Hill reported dizziness at night and paresthesias to the second and third digits of his right hand after chemical exposure at work. The claim administrator issued an order dated September 26, 2019, holding the claim compensable for the diagnosis of chemical inhalation.

Mr. Hill underwent an MRI of his brain/head without contrast on July 21, 2022, revealing prominent bifrontal cerebrospinal fluid spaces, probably due to atrophy. No acute infarction or mass was noted, and no significant chronic microvascular ischemic changes were noted. An ISO claim search report dated July 29, 2022, indicated that Mr. Hill sustained a neck sprain injury on April 29, 2000.

On October 2, 2022, Vangel Quilon, NP, requested an MRI of Mr. Hill's cervical spine without contrast for the diagnosis of cervical disc disorder with radiculopathy. The claim administrator issued orders dated October 13, 2022, and October 18, 2022, denying authorization for an MRI of the cervical spine because the cervical spine is not a compensable body part in the claim.

Mr. Hill was seen by Soham Sheth, M.D., a neurologist, on December 7, 2022. Mr. Hill reported that he was having balance difficulties and ataxia, but Dr. Sheth observed that it was unclear if Mr. Hill's vertigo symptoms were related to his exposure to spray paint, and that the MRI of his brain showed no acute abnormalities. Dr. Sheth opined that he needed to evaluate Mr. Hill's cervical spine for causes related to ataxia and requested a cervical MRI. Dr. Sheth further opined that it would be part of the inhalation workers' compensation claim. Dr. Sheth requested a referral for physical therapy for the diagnosis of ataxia.

On April 5, 2023, John B. Talbott, M.D., performed an independent medical evaluation of Mr. Hill. Mr. Hill reported that he developed a number of complaints, including failing memory, shaking, difficulty walking, pains, numbness in his hands and feet, and swelling in his legs after being exposed to Rustoleum spray paint on July 4, 2019. Mr. Hill further reported that he had preexisting conditions of diabetes mellitus, insulin dependent; hypertension; hyperlipidemia; venous insufficiency; and depression. Dr. Talbott noted that Mr. Hill had a shaking condition, which was associated with gait instability, and some observers thought he had Parkinson's, while others believed he had a non-Parkinsonian shaking condition. Mr. Hill reported a history of extremity paresthesias involving both lower extremities. Dr. Talbott noted that the numbness in Mr. Hill's hands and arms predated the compensable inhalation injury.

Dr. Talbott reported that Mr. Hill did not complain of cervical pain, but he exhibited essential tremor, generalized polyneuropathy with areflexia in both lower extremities, and graded sensory loss to the level of the knees bilaterally. Dr. Talbott noted that Mr. Hill

2

exhibited a graded sensory loss in both upper extremities up to the level of the mid-forearm and a limited range of cervical motion in all plains, compatible with a diagnosis of cervical spondylosis. Dr. Talbott opined that Mr. Hill's complaint of shooting, tingling pains radiating down both arms was compatible with Lhermitte's sign. Dr. Talbott concluded that Mr. Hill's paresthesias and difficulty with ambulation related to multiple entrapment neuropathies and diabetic polyneuropathy and the cognitive impairment could be explained by his volume loss on the MRI scan of the brain. Dr. Talbott opined that Mr. Hill could have experienced a headache on the day of the toxic exposure, but chronic headaches were not related to the exposure and could be explained by Mr. Hill's other medical problems.

On July 26, 2023, Dr. Sheth authored a report indicating that Mr. Hill was exposed to spray paint while working in July of 2019. Mr. Hill experienced an immediate headache and numbness in all fingers and felt off balance. Mr. Hill continues to have headaches, dizziness, paresthesias in his fingers, and tremors. Dr. Sheth said Toluene and Benzene could be found in acrylic spray paint and that exposure could cause toxicity throughout the body, including the central and peripheral nervous system. Dr. Sheth opined that Mr. Hill's symptoms, including headaches, balance difficulties, paresthesias, and tremors were possibly related to his exposure to spray paint, however, it was unclear if a one-time exposure would lead to chronic symptoms lasting more than three years. Dr. Sheth believed that an MRI of the cervical spine was necessary to rule out other etiologies, which could lead to similar symptoms.

On February 5, 2024, the Board issued an order affirming the claim administrator's orders denying authorization for an MRI of the cervical spine and denying the addition of cervical disc disorder with radiculopathy, vertigo, paresthesias, and tremor as compensable conditions in the claim. The Board found that a preponderance of credible medical evidence establishes that cervical disc disorder with radiculopathy, vertigo, paresthesias, and tremors are not related to the compensable injury. The Board further found that an MRI of Mr. Hill's cervical spine is not medically necessary and reasonably required for treatment of the compensable injury. Mr. Hill now appeals the Board's order.

Our standard of review is set forth in West Virginia Code § 23-5-12a(b) (2022), in part, as follows:

> The Intermediate Court of Appeals may affirm the order or decision of the Workers' Compensation Board of Review or remand the case for further proceedings. It shall reverse, vacate, or modify the order or decision of the Workers' Compensation Board of Review, if the substantial rights of the petitioner or petitioners have been prejudiced because the Board of Review's findings are:
>
> (1) In violation of statutory provisions;

(2) In excess of the statutory authority or jurisdiction of the Board of Review;
(3) Made upon unlawful procedures;
(4) Affected by other error of law;
(5) Clearly wrong in view of the reliable, probative, and substantial evidence on the whole record; or
(6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

Syl. Pt. 2, *Duff v. Kanawha Cnty. Comm'n*, No. 23-43, 2024 WL 1715166, __ W. Va. __, __S.E.2d __ (2024).

Mr. Hill argues that the Board decision failed to provide adequate analysis as to how it reached its conclusion that the requested diagnoses were not causally related to the toxic exposure injury of July 4, 2019. Further, Mr. Hill argues that the medical evidence of record reveals that his vertigo, paresthesias, and tremors began following the compensable exposure.[2] Finally, Mr. Hill argues that Dr. Sheth stated in his July 26, 2023, report that the requested diagnoses could be caused by the toxic chemical he was exposed to. We disagree.

Here, the Board found that the evidence does not establish that cervical disc disorder with radiculopathy and vertigo, paresthesias, and tremor are causally related to the chemical inhalation that occurred on July 4, 2019. The Board noted that Mr. Hill's claim application does not indicate that he sustained a cervical injury on July 4, 2019. The Board further noted that Dr. Sheth stated that it was unclear if a one-time exposure would lead to chronic symptoms lasting more than three years and it was only a possibility that Mr. Hill diagnoses were caused by his exposure. The Board further found that an MRI of Mr. Hill's cervical spine is not medically necessary and reasonably required for treatment of the compensable injury.

Upon review, we conclude that the Board was not clearly wrong in finding that Mr. Hill failed to establish a causal connection between the compensable one-time chemical inhalation injury in July 2019 and the diagnoses made in December 2022 of cervical disc disorder with radiculopathy, vertigo, paresthesias, and tremor. Further, we conclude that the Board was not clearly wrong in finding that Mr. Hill failed to establish that the

---

[2] Mr. Hill argues that the presumption under *Moore v. ICG Tygart Valley, LLC*, 247 W. Va. 292, 879 S.E.2d 779 (2022) should apply in this case because the symptoms began after the compensable exposure. However, as Mr. Hill failed to establish a causal connection between the exposure and his diagnoses, we find that the *Moore* presumption does not apply in the instant case. Further, the *Moore* presumption does not apply because Dr. Talbott established that Mr. Hill had similar symptoms prior to the compensable injury.

4

requested MRI was medically related and reasonably required for treatment of the compensable injury.

As the Supreme Court of Appeals of West Virginia has set forth, "[t]he 'clearly wrong' and the 'arbitrary and capricious' standards of review are deferential ones which presume an agency's actions are valid as long as the decision is supported by substantial evidence or by a rational basis." Syl. Pt. 3, *In re Queen*, 196 W. Va. 442, 473 S.E.2d 483 (1996). With this deferential standard of review in mind, we cannot conclude that the Board was clearly wrong in affirming the claim administrator's orders denying authorization for an MRI of the cervical spine and denying the addition of cervical disc disorder with radiculopathy, vertigo, paresthesias, and tremor as compensable conditions in the claim.

Accordingly, we affirm the Board's February 5, 2024, order.

Affirmed.

**ISSUED:** September 4, 2024

**CONCURRED IN BY:**

Chief Judge Thomas E. Scarr
Judge Charles O. Lorensen
Judge Daniel W. Greear